UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
GEORGE DEABOLD,

        *Plaintiff*,

     -against-

WILLIAM BRENNAN, *et al.*,

        *Defendants*.
-------------------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-3035 (OEM) (JAM)

**ORELIA E. MERCHANT, United States District Judge:**

      Plaintiff George Deabold ("Plaintiff" or "Deabold") commenced this action against defendants Dr. William Brennan ("Superintendent Brennan"), Kerry Wachter, Jeanine Caramore, Gary Baldinger, Cher Lepre, and Christopher Brooks (the "Board Defendants") (together, "Defendants") both individually and in their official capacities as members of the Massapequa Union Free School District Board (the "District"). Plaintiff seeks (1) temporary emergency relief; (2) preliminary and permanent injunctive relief; and (3) $250,000 in damages for alleged defamation. *See generally* Complaint ("Complaint" or "Compl."), ECF 1. Plaintiff also alleges violations of both his First Amendment rights and his due process rights under the Fourteenth Amendment. *Id*.

      Now before the court is the Defendants' motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons below, Defendant's motion to dismiss the is **GRANTED,** and the Complaint is dismissed in its entirety.

# BACKGROUND[1]

Plaintiff is a special education advocate. He is retained by families residing in the Massapequa Union Free School District Board to assist and represent school-aged children in meetings and administrative hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.§§ 1400-1490.[2] Compl. ¶ 7.

On December 2, 2022, the District, via District Superintendent Brennan in his official capacity,, sent Plaintiff a letter explaining that, due to Plaintiffs "hostile statements and threatening remarks made while communicating with District administrators and employees," Plaintiff was "effective immediately, up through the end of the 2022-2023 school year, . . . prohibited from entering the District's buildings and grounds at any time or participating in any District meeting, proceeding and/or hearing, without the express written approval of the Board of Education." Compl., Exhibit ("Ex.") A ("December 2022 Ltr."), ECF 1 at 8-9; Compl. ¶ 5.

On December 7, 2022, Plaintiff sent a "Due Process Complaint Notice" ("Due Process Notice") to the District. *See* Defs.' Motion to Dismiss, Ex. C ("Due Process Notice"), ECF 20-3; Compl. ¶ 6 (referencing Due Process Notice). The Due Process Notice sought from the District a "due process hearing under section 504 of the [R]ehabilitation [A]ct of 1973/ADA." Due Process Not. at 2. Plaintiff further asserted that the Due Process Notice served as his method of exhausting any of his required administrative remedies. *Id.* In addition, the Due Process Notice recited

---

[1] The Court draws the following facts from "the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). "The Court may consider documents outside of the complaint, however, if the plaintiff relied on them to frame his pleading." *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 252–53 (E.D.N.Y. 2015). "The Court may also take judicial notice of public documents in deciding a motion to dismiss." *Id.* (citing *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002)).

[2] The IDEA "provides that potential plaintiffs with grievances related to the education of disabled children[.]" *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002).

various purported violations of free speech and participation rights, defamation by defendant Caramore, several retaliation claims against the Board Defendants and Superintendent Brennan under the Rehabilitation Act, and substantive and procedural due process violations. *See id.* at 6-7.

> On January 6, 2023, Superintendent Brennan sent another letter to Plaintiff stating:
>
> The District is in receipt of your December 7, 2022 "Due Process Complaint Notice" requesting a hearing under Section 504 of the Rehabilitation Act. The District has carefully considered your request and has determined that the requested hearing is not appropriate because [Plaintiff] lack[s] standing to request same.

Compl., Ex. B ("Jan. 2023 Ltr."), ECF 1 at 11.

Plaintiff commenced this action by filing the Complaint on April 21, 2023. Plaintiff alleges that the actions taken by Brennan—sending these two letters and instituting Deabold's ban from District premises until the end of the 2023 school year—violated his First Amendment free speech rights in "represent[ing] claimants against the School District" and "also constitutes retaliation against Plaintiff [] and the disabled students that he represents, for exercising their right to complain about unfair treatment in violation of the [IDEA], which is itself prohibited and barred by the provisions of said Act." Compl. ¶¶ 6-7. Relatedly, Plaintiff also alleges "said letters dated December 2, 2022, and January 6, 2023, also provide no mechanism or process for appealing the ban and the decisions to ban Plaintiff. This is in violation of the Fourteenth Amendment to the Constitution of the United States of America because it does not provide Due Process of Law." *Id.* ¶ 8.

In connection with the filing of the Complaint, Plaintiff also filed a motion for a temporary restraining order ("TRO"), seeking injunctive relief. ECF 2. On April 26, 2023, the Court (Azrack, J.) held a hearing on the TRO and denied the TRO at the conclusion of the hearing. *See* TRO Hearing Transcript 20:22-23, ECF 11.

3

On June 16, 2023, Defendants requested a pre-motion conference in anticipation of their motion to dismiss. ECF 9. The case was subsequently reassigned to the undersigned on July 11, 2023.

On August 30, 2023, Defendants filed a status report representing that

> [O]n or about June 27, 2023, the District sent Plaintiff a letter advising that it has, effective July 1, 2023, determined to lift any then-present restrictions prohibiting Plaintiff from being on District property or attending District meetings. Plaintiff received that letter at or around the time the restrictions were lifted on July 1, 2023. Since that time, Plaintiff has attended several District meetings and has, in fact, been in attendance at a hearing being conducted on District premises as recently as yesterday (and he will appear in person again for a hearing on August 31).

Defs' August 30, 2023 Status Report, ECF 13.

On September 6, 2023, the Court held the pre-motion conference. *See* Minute Entry 9/06/2023. At the conference, Plaintiff's counsel represented and confirmed that the ban on Plaintiff had been "lifted" by the District. *See* Pre-Motion Conf. Tr. 8:4-6 (THE COURT: But assuming all that you're saying is true your client had access to the hearing, correct? PLAINTIFF'S COUNSEL: Correct, Your Honor.").

The Court set a briefing schedule, and the fully briefed motion to dismiss was filed on December 22, 2023. *See* Defendants' Memorandum in Support of Motion to Dismiss ("Def's Memo"), ECF 21; Plaintiff's Affirmation in Opposition to Motion to Dismiss ("Pl's Opp."); Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss the Complaint ("Reply"), ECF 22.

**STANDARD OF REVIEW**

At the motion to dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018), *aff'd*, 592 U.S. 43 (2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)).

**DISCUSSION**

A. **Injunctive Relief**

Plaintiff fails to establish a fundamental requirement of injunctive relief: any sort of likelihood of success on the merits.[3] *MyWebGrocer, L.L.C. v. Hometown Info., Inc.,* 375 F.3d 190, 192 (2d Cir.2004) ("A party seeking a preliminary injunction must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair grounds for litigation and a balance of hardships tipping decidedly in the movant's favor." (cleaned up)). This is because, as explained below, Plaintiff lacks standing to bring any claims under either IDEA or § 504.[4] Accordingly, the claim for injunctive relief must be dismissed.

---

[3] Since this threshold requirement for injunctive relief is not met, the Court need not reach the issue of whether Plaintiff's claim for preliminary and permanent injunctive relief is now moot given the District's lift of the ban on Plaintiff. *See* Defs' Memo at 4-5.

[4] Plaintiff attaches to his Complaint three executed letters of "consent" from parents of children he represents which purportedly grant him standing to sue here in federal court. Compl. ¶ 7 (citing Compl., Ex. C, ECF 1 at 12-15); Opp. ¶ 8. However, these letters simply grant Plaintiff "permission/consent" to communicate to school staff about the subject disabled child and allow Plaintiff to review and make copies of the child's school records. They are of no import to the standing analysis. *See* Compl., Ex. C.

### 1. Plaintiff Lacks Standing to Assert IDEA Claims

Contrary to Plaintiff's argument, *see* Opp. ¶ 8, Plaintiff lacks standing to prosecute claims based on the IDEA. Binding precedent is clear that IDEA "only creates a private right of action for disabled children and their parents." *Collins v. City of New York*, 156 F. Supp. 3d 448, 457 (S.D.N.Y. 2016) (collecting cases finding no standing for, inter *alia*, substitute teachers, municipalities, and non-custodial parents); *see Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 529 (2007) (examining the statutory text and scheme, finding that "there is no necessary bar or obstacle in the law, then, to finding an intention by Congress to grant parents a stake in the entitlements created by IDEA").

Beyond these two types of recognized claimants, the Second Circuit has "[r]efuse[ed] to imply a private cause of action [into IDEA] in the absence of clear congressional intent and in the face of an express allocation of enforcement authority to (1) those aggrieved in section 1415 proceedings and (2) the Secretary of Education." *Cnty. of Westchester v. New York*, 286 F.3d 150, 153 (2d Cir. 2002). As the Second Circuit explained in *Westchester*, "[s]ince Congress expressly provided a private right of action in favor of certain groups, specifically, any party aggrieved by particular findings or a decision rendered under subsection 1415, *see* 20 U.S.C. § 1415(i)(2)(A) but did not expressly provide a private right of action in favor of a county, educational agency or any other entity seeking to challenge the lack of an interagency agreement required by § 1412(12), we find it extremely unlikely that Congress intended to do so." *Id.*, 286 F.3d at 152 (rejecting a municipal county's IDEA standing argument). Here, the burden to establish standing under the IDEA falls on plaintiff. *See New York City Envtl. Justice Alliance v. Giuliani,* 214 F.3d 65, 73 (2d Cir.2000) ("The person seeking a private remedy bears the burden of demonstrating that Congress intended to make one available."). Plaintiff provides no evidence that Congress clearly intended

6

IDEA to cover attorney representatives hired by families of children to represent them in administrative proceedings under IDEA as claimants who can sue under the IDEA. Thus, the Court declines to find one.

In fact, other district courts that have addressed this exact issue have already rejected such standing arguments brought by "counsel who formerly represented a parent and child in administrative proceedings with respect to the child's educational needs" and who argued that he "ha[d] standing to commence an action under the IDEA in a United States District Court—not on behalf of the parent or child, but on former counsel's own behalf[.]" *See Boretos v. Fenty*, 09-CV-0818 (EGS)(DAR), 2009 WL 4034987, at *5 (D.D.C. Nov. 17, 2009), *report and recommendation adopted*, 09-CV-0818(EGS), 2010 WL 11707189 (D.D.C. Feb. 11, 2010). In *Boretos*, the court found that the Plaintiff representative lacked standing because that it could not "'confidently conclude' from the text and legislative history of the IDEA that Congress intended to create a private right of action in favor" of disabled children's IDEA representatives such as Plaintiff. *Id.* citing (quoting C*nty. of Westchester*, 286 F.3d at 153). So too, here.

Accordingly, the Court determines that Plaintiff lacks standing to assert any claims pursuant to the IDEA in this action; thus, he could not succeed on the merits of his claim for injunctive relief on this ground.

### 2. Plaintiff Lacks Standing to Assert Rehabilitation Act § 504 Claim

Similarly, Plaintiff's Rehabilitation Act § 504 claim against Defendant must fail. First, as with his IDEA claim, Plaintiff lacks standing to assert § 504 claims against on behalf of the children he represents in administrative hearings and proceedings. The express text of § 504 states that it covers only "individual with a disability" as that term is defined in the Rehabilitation Act and only allows actions by "aggrieved parties." *See* 29 U.S.C.A. § 794(a) (prohibiting discrimination of

7

"[n]o otherwise qualified *individual with a disability* ... shall, solely by reason of her or his disability, be excluded . . . ." (emphasis added), *id.* § 705(19) (definition).  Like in the IDEA, an "aggrieved party" has been construed only to provide standing to the disabled children and the child's parents.  *See A.M. ex rel. J.M. v. NYC Dep't of Educ.,* 840 F. Supp. 2d 660, 675 (E.D.N.Y. 2012) (explaining that "a parent of a child with a disability has a particular and personal interest' in preventing discrimination against the child." (cleaned up)), *aff'd sub nom. Moody ex rel. J.M. v. NYC Dep't of Educ.*, 513 F. App'x 95 (2d Cir. 2013).  Again, nowhere does Plaintiff explain how Congress intended or provided for individuals such as himself to also have standing to prosecute a § 504 claim or how his profession work provides him with a "recognized legal interest" like that of a parent.  *See Winkelman*, 550 U.S. at 529.  Thus, the Court concludes that Plaintiff also lacks standing to bring claims under § 504.[5]  As Plaintiff does not have standing to sue Defendants' pursuant § 504, he cannot maintain a claim for injunctive relief premised on this ground either.  Accordingly, Plaintiff's claim for injunctive relief is dismissed.

**B. Defamation**

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020).  To state a claim for defamation under New York law, a plaintiff must allege "(1) a written defamatory factual statement concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times*, 940 F.3d 804, 809 (2d Cir. 2019).  To survive a motion to dismiss, a plaintiff "must plead facts that, if proven, would establish that the defendant's

---

[5] Further, "[i]nsofar [Plaintiff] is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

8

statements were not substantially true." *Tannerite Sports LLC v. NBC Universal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). "[A] plaintiff must prove falsity to prevail in any libel action—whether *per se, per quod,* or by implication—truth is an absolute defense." *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 249 (S.D.N.Y.), *aff'd,* 578 F. App'x 24 (2d Cir. 2014). Additionally, "[p]ublication of a libel to a third party is a necessary element of a defamation claim." *Van-Go Transp. Co. v. New York City Bd. of Educ.*, 971 F. Supp. 90, 102 (E.D.N.Y. 1997) (citing *Youmans v. Smith,* 153 N.Y. 214, 218, 47 N.E. 265 (N.Y. 1897)). "Publication occurs when the libelous words are read 'by someone other than the person libeled and the person making the charges.'" *Id.* (quoting *Fedrizzi v. Washingtonville Cent. Sch. Dist.,* 204 A.D.2d 267, 268 (2d Dep't 1994)).

  Here, the sum total of Plaintiff's allegations regarding defamation are:

> [the purported] violation of Plaintiff's rights and banning and barring Plaintiff from appearing on school grounds and attending meetings and proceedings and hearings has damaged Plaintiff George Deabold in his profession of representing claimants with disabilities against school districts who are violating their rights, in an amount in excess of $100,000, which also constitutes defamation of character, and has damaged Plaintiffs reputation.

Compl. ¶ 11.

  Further, Plaintiff contends "[w]ith regard to the Defamation cause of action, that cause of action is based upon the Superintendent's letter and the subsequent publication of said letter and its contents by the Defendants, both orally and in writing, which greatly damaged Plaintiff in his profession of representing disabled students against school districts and damaged both his income and his reputation." Opp. ¶ 9.

  As an initial matter, Plaintiff has not alleged anywhere in his Complaint that the December 2022 Letter was published to a third party or otherwise read by third parties, failing the publication

9

element.[6] Further, the December 2022 Letter is addressed to only Plaintiff, and there is no indication in the letter itself that it was mailed or copied to any other person. *See* December 2022 Ltr. Thus, Plaintiff's defamation claim fails on this ground alone. *See Albert v. Loksen*, 239 F.3d 256, 269 (2d Cir. 2001) ("Under New York defamation law, publication is a term of art . . . A defamatory writing is not published if it is read by no one but the one defamed. Published it is, however, as soon as read by any one else.") (cleaned up).

Plaintiff's defamation claim also fails to sufficiently allege injury, *i.e.*, special damages. Special damages consist of "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation by defamation; not from the effects of defamation." *Idema v. Wager*, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000), *aff'd*, 29 F. App'x 676 (2d Cir. 2002) (quoting *Matherson v. Marchello,* 100 A.D.2d 233, 234 (2nd Dept. 1984)) (quotation marks omitted). "When the loss of business is claimed, persons who ceased to be customers must also be named and the losses itemized." *See id.* (citing same). "'Round figures' or a general allegation of a dollar amount as to special damages do not suffice." *See id.* "It is well settled law in New York that special damages must be fully and accurately defined 'with sufficient particularity to identify actual losses.'" *Id.* (quoting same). "In all cases that are libel *per quod*, failure to plead special damages is a fatal defect." *Id.*

In the instant case, although Plaintiff states generally how he has been affected by Superintendent Brennan's December 2, 2022 letter, Plaintiff fails to identify actual losses or name any individuals who have ceased to retain him or employ his representative services. Thus, Plaintiff's defamation claim is dismissed.

---

[6] At a motion to dismiss the Court considers the sufficiency of the *pleadings*; the Court need not consider his attorneys' conclusory statement contained in his Opposition that Superintendent Brennan published the letter, Opp. ¶ 9.

### C. First Amendment and Due Process Allegations

As indicated above, the Complaint contains vague allusions to First Amendment and Due Process violations based on Plaintiff's initial ban from District premises. Compl. ¶¶ 3, 7-8. To the extent that such vague allusions can be construed as claims, such claims are without merit. *See Ahmad v. White Plains City Sch. Dist.*, 18-CV-3416 (KMK), 2019 WL 3202747, at *18 (S.D.N.Y. July 16, 2019) ("To the extent Plaintiff's First Amendment claim is predicated on being banned from [District] property, it still fails."). "Schools possess the right to exercise ultimate authority for access to students, school buildings and school property." *Id.* (citation and quotation marks omitted); *see also Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 433 (E.D.N.Y. 2016) (same), *aff'd*, 666 F. App'x 92 (2d Cir. 2016).

Plaintiff "has not cited, nor has the [C]ourt found, any case law supporting the proposition that the First Amendment guarantees access to school grounds." *Kadri v. Groton Bd. of Educ.*, 13-CV-1165, 2014 WL 1612492, at *5 (D. Conn. Apr. 22, 2014); *see also Roth v. Farmingdale Pub. Sch. Dist.*, 14-CV-6668, 2016 WL 767986, at *10 (E.D.N.Y. Feb. 26, 2016) ("[U]nder New York law, a plaintiff does not have a constitutionally protected liberty interest in accessing school property."). Plaintiff makes no specific allegations relating to unconstitutional time, place, and manner restrictions, such as restrictions based on his beliefs or viewpoints, and does not allege that his ban from school property impacts his ability to speak, assemble, or associate in alternative fora. *See generally* Compl. Therefore, Plaintiff fails to state a First Amendment claim based on being barred from entering the District property. *See Ahmad*, 2019 WL 3202747, at *18 (dismissing First Amendment claim "predicated on being banned from [public school district] property").

Similarly, Plaintiff neither identifies nor provides any legal authority establishing a cognizable liberty or property interest in either (a) his access to school property or (b) his continued

11

representation of disabled children in the District. *See Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir.2012) (a Fourteenth Amendment procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest and (2) deprivation of that interest without due process). To the contrary, courts have routinely found that "under New York law, a plaintiff does not have a constitutionally protected liberty interest in accessing school property." *Roth v. Farmingdale Pub. Sch. Dist.*, 14-CV-6668, 2017 WL 395211, at *19 (E.D.N.Y. Jan. 30, 2017) (collecting cases). Furthermore, Plaintiff presents no law to support a property interest in maintaining his representation of disabled children in the District or at large.[7]

The gravamen of Plaintiff's Complaint is that he was not afforded due process because he lacked a forum or hearing to challenge his ban prior to its imposition, nor was he provided with any "mechanism or process for appealing the ban and the decisions to ban [him.]" Compl. ¶ 8. "Due process does not, in all cases, require a hearing before the state interferes with a protected interest, so long as 'some form of hearing is [provided] before an individual is finally deprived of [the] property interest.'" *Broomer v. Huntington Union Free Sch. Dist.*, 12-CV-574, 2013 WL 4094924, at *4 (E.D.N.Y. Aug. 13, 2013) (quoting *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011)), *aff'd*, 566 F. App'x 91 (2d Cir. 2014). Here, as Defendants point out, Plaintiff could have availed himself of a hearing pursuant to Article 78 proceeding in New York state court. Pl's Memo at 12. The Second Circuit has firmly held that "[a]n Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes" when a plaintiff alleges interference with a property interest, including employment or participation with school districts. *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001); *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 881 (2d Cir.1996) (Article 78 hearing an adequate post-deprivation

---

[7] Indeed, there is no allegation or evidence that Plaintiff is not free to continue to act as an advocate and representative elsewhere in New York.

remedy for property interest in job status); *see also Roth,* 2017 WL 395211, at *19 (Article 78 sufficient post-deprivation process for termination of provision school district AV-technician's job).

In sum, Plaintiff has failed to state a cognizable First Amendment or due process claim.

## CONCLUSION

For the above reasons, none of Plaintiff's claims survive, and the Complaint is therefore **DISMISSED** in its entirety. The Clerk of Court is directed to enter judgment and close this case.

**SO ORDERED**.

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

Dated: August 15 2024,
Brooklyn, New York